We have a third case on the calendar this morning, and we'll ask counsel to please come up. I know we have one attorney appearing remotely. This case is case 24-6081. It's Martinez-Rodriguez v. Bondi. So, Mr. Siegel, I see we have you here, and we have counsel by video as well. Okay, I can't see him yet. Okay, counsel who's on video, can you go ahead and just appear by video, turn on your video for us? Yes, I will turn on the video in just one second. Okay, thanks. I just want to be able to see you on video but have you on mute. Okay, so just go ahead and get that set up. We'll do it, Your Honor. Mr. Siegel, let's just give counsel for the government a chance to get set up here. Your Honor, thank you. Okay, there we go. Thank you, sir. Good to see you by video, and we'll ask you just to go ahead and mute your device, and we'll go ahead and hear from Mr. Siegel. Good morning, sir. Good morning, Your Honors. May it please the Court, Josh Siegel. I represent the petitioner Maria Heidi Martinez Rodriguez in this case. I would like to reserve two minutes for rebuttal if possible. I also represent the petitioner's son, Gerardo Jose Mamaya Martinez, who's a minor. He's 10 years old now, and I only mention him because the lead petitioner was a minor. At the time, she had sexual relations with the father of Gerardo. She gave birth a month after she turned 18. She's, you know, that's commonly known as statutory rape. It's the same in El Salvador. El Salvador has an age of consent of 18 years old, and there are stiff penalties for violating that statute. I only mention this now because it encapsulates the main issue in this case, and there's really only one main issue, and that is whether the government of El Salvador is both willing and able to control the persecution of private actors. That's basically the only issue. Well, there's also this issue of your request to amend the notice to appear, which I did want to hear from you on as well. Sure, yes. Yes, that is the second issue. There are two parts to that main issue, and the first is, and this court has said that the board, the agency errors when it only looks at the first part of that question but not the second, that is, it only looks at whether a government is willing to control the persecutors and not also able to, and that's error if the board does that. This court has also said that if the court or the agency ignores probative evidence of either of those issues, that's error too, and it has to be probative and it has to be, you know, or highly probative, potentially dispositive, but it can't just ignore the evidence, and that's the problem here is the board and the agency simply ignored the second part of that question. They looked at whether the government El Salvador was willing to control persecutor, private persecutors, perpetrators of domestic violence, and then they stopped the inquiry. They looked and they said, well, El Salvador has laws against domestic violence. There were some hotlines set up during COVID for domestic abuse. If women felt they were being abused, they could call these hotlines. They bring up some statistics about women in government positions that the majority of prosecutors, the majority of public defenders in El Salvador are women, and almost half the judges are women. Then they stop. They don't go into the other evidence that addresses the specific issue of whether, well, that's great. El Salvador has rules against domestic violence, but are they actually able to enforce those rules? Are they able to control the private persecutors? And they ignored swaths of evidence in doing it. The most, the easiest to point out is that our own Department of State report, the United States Department of State, which has said that, yes, while there are laws against domestic violence, they are poorly enforced. It remains a widespread problem throughout the country, and it's a serious problem. Now, it's hard to see why the board would not even mention it, let alone sort of address that, which at least it's probative evidence. At most, it's dispositive. Like our own Department of State is saying El Salvador is unable to control this problem. It's widespread. It's rampant. That's it. Counsel, am I missing something in your brief? Section 1B specifically says you should be, adjudicator would be compelled to conclude that it's unwilling to insert itself. And then I would be looking then for a next section which says is unable to. And I don't find that in the brief. Am I missing a page? No, Your Honor. The brief sort of melds it both together and says that the agency should have looked at all of the evidence and didn't. It kind of stopped at the first part. And upon looking at it and sort of digesting it and reviewing the case law and everything else, this is the reality of these courts' decisions. So, yeah, I apologize I didn't articulate it as I should have in the brief. Can I ask you about this issue with the parole document? Yes. So, first of all, what are you asking for here? So, the notice to appear was mischarged. That's the charging document. One of the allegations is that she entered without being admitted or paroled. That just wasn't true. That wasn't found out until after she pled and conceded the charge in the immigration court. So at the final hearing, all of a sudden it came to light that there's a parole stamp in her record that shows that she was paroled for humanitarian purposes. Well, there's a parole stamp on a piece of paper that doesn't have her name on it, doesn't have, does not, at the bottom of it, it says I-94, but it's clearly a copy of one page of a multi-page or a two-sided document. Now, I'm not saying that it was forged or where it came from, but I take it from the record that there's no indication other than, oh, I found it in the record of what that is. Just a couple of things, Your Honor. First, that's how DHS gives those parole stamps, humanitarian parole. They don't put the name on it, which I find is odd, too. So they don't give them an I-94? Not an official I-94 that someone would get if they come in on a visa or things like that. That stamp, there's a little note on it that says that is an I-94. I don't know why they do it that way. I mean, I have it here. Is there something you said that says it's not an I-94? No, I think in the government's brief they mentioned that it's not an official I-94. I think it is. It's just done in a different way under 212 D-5. And that's where the BIA says the record does not contain a copy of the Respondent's Form I-94. The only – well, the administrative record does contain it in two places, at pages 80 and 444. 80 is the thing that has the stamp on it. Yes. So the only thing in the immigration judge's record is the testimony that he reviewed it in court and said, yes, I see that this is a parole stamp. And what's the other page reference you said, page 44? 444. That's the same thing. It's the same document. It's the same document.  But so this was provided to you by your client? I'm sorry? This was provided to you by your client? That's how we have this? Yes. Well, you don't even say that, do you? It just – as I read the record, it says I found it in the file. Well, it was a – it was a – I mean, I don't know if it was you, whoever was asking. It was me, but it was documents provided on the day of her final hearing. Provided by? The Respondent. By the petitioner. By the government. By the government? No, by the petitioner. By your client. So I didn't get anything from the government. This was all from the petitioner. And going through it, at the last second – Was she in court? She was, yes. You could have asked her, where did this come from? Well, by then, testimony was closed. I guess I could have recalled her, but. So what did the IJ have to say when this was raised? He said that he – that that was evidence of her conditional parole under Section 236, which is not correct. Under the cases and under how parole is viewed, a humanitarian parole under 212d-5 is a parole which allows her to – it opens up certain avenues for her. So, for instance, if she happened to marry somebody or had another person who could petition her – It's only temporary, right? So what does the expiration of the 60 days that it's temporary for mean? Because she didn't even apply for asylum within the 60 days, right? It's humanitarian parole. It's different in every case. But typically, it's done until the adjudication of their asylum application. Even though that's not what it says there?  Yes. They do it for humanitarian purposes. A lot of times, if a woman is pregnant or has a young child with them, they don't want to just sort of put them into incarceration right then. They want to kind of parole them. The statute says, such parole of an alien – I'm reading 1182-5A – shall not be regarded as an admission of the alien, and when the purposes shall, in the opinion of the secretary, have been served, the alien shall forthwith return or be returned to the custody. So wouldn't that mean that that's what should have happened after the 60 days that said that this expired? Yes, though there are alternatives to incarceration. I'm not saying that it had to be, but that it clearly ended. I mean, I have had cases, one of which went to the Supreme Court with Mary Alitos, who were paroled, and the parole was good indefinitely. Oh, yes. But this was not. No. So the effect of it being temporary should have some effect, shouldn't it? Yes. But she was paroled. So the notice to appear as charged was incorrect. It wasn't that she was – she came in without admission or parole. She legally was paroled. So the charge is wrong. And you think this notice – sorry, go ahead. I was going to say, well, ask your colleague, do they agree that she was paroled in the sense of a 60-day parole, and does that make any difference? But your answer is yes, the stamp is good, and the fact of parole may help her somewhere down the road in something completely different. That's correct. That was my question. So you want the notice to appear to be amended because what will happen? You know, it says that she's an alien president of the United States who has not been admitted or paroled. Do you think she has been paroled based on this document? And so then what will happen if we change this? What is she going to get? Well, if she has any other option, and I haven't had an in-depth discussion with her, but if she had any other option, for instance, if she was married to a United States citizen, that person could petition her, and then she could apply for a green card inside the United States. And, you know, she may need a waiver if she has a removal order, but that's how it would affect her case. So is this box otherwise usually checked, I guess we can ask the government this, when somebody enters the country unlawfully? Do you mean the box at the top? No, the second box. It says you're an alien president of the United States who has not been admitted or paroled. Yes. Yeah, so what the box that should have been checked was the top box. She's an arriving alien. She's an applicant for admission.  Okay. We'll put some time on the clock. We'll put two minutes on the clock for rebuttal. Okay, great. And let's hear from the government. May it please the court, my name is Andrew Oliveira. On behalf of the respondent, the Attorney General. First, to address the question of asylum and withholding of removal, the evidence in the record does not compel reversal of the immigration judge's determination, as upheld by the board, that the government of El Salvador was unable or unwilling to control the private actors. The immigration judge considered the entire record and ultimately concluded that petitioners did not meet their burden of proof. On appeal, the board reviewed that evidence and reached the same conclusion. While the immigration judge specifically cited to certain aspects, there's nothing to indicate that the immigration judge ignored the rest of the evidence in the record. With respect to the remand question, since that was, had the majority of the questions, the boards, as they addressed it, there is no evidence that was presented to the board that this was petitioners I-94. That was very explicitly what the board held. And as we point out in the brief, we compare and contrast what was petitioners' brothers I-94 and what she submitted for herself. Counsel, you didn't make that incompleteness argument to the board, did you? I'm sorry? You didn't make that incompleteness argument to the board. I mean, the board said nothing about the stamp being there. It said that it didn't have the I-94 form, but it didn't say anything about the stamp that actually has an indication that it's the I-94 form. And that was never addressed by, number one, never addressed by either the BIA or, frankly, the government never made that argument. Well, the board specifically said they didn't have her I-94. And then they also addressed the motion for administrative closure, which is the motion that had the stamp. So it's – I wouldn't say that it's – it's not fair to say that the board ignored it. It's simply that the board concluded that what was submitted didn't establish that she was paroled in. Go ahead. Well, I guess a couple questions. I mean, first of all, is it your contention that this form of document is just not itself a I-94 or parole document? Setting aside for a second whose document this is, is that – is that what you're saying? No, Your Honor. We recognize that the form has a stamp. It has I-94 on it. There's nothing to indicate that it is Petitioner's I-94. That is, what would a, quote, real I-94 have some kinds of forms and boxes that said, you know, this is your name, this is your birth date, this is your country of origin? I mean, I tried to go on the web and find I-94s, and everything on the web seemed to have that. But I don't know what this form was supposed to look like. I mean, it looks like the back of something that there's a front for, but I don't know. You're the expert. Correct, Your Honor. And I would also point out that in other cases where they prove identity by submitting their passport, you'll notice that every page of this passport is copied, and the original is presented to the immigration judge, so the immigration judge can confirm that the copy – page one might have their name and identifying information, and page three might have their entry stamp for, here we just have the stamp. And the board correctly concluded that that evidence wasn't sufficient to alter her previous admission that she entered without inspection. Well, the board didn't say that, right? The board didn't say that. The board said that there's no – I mean, I read the language. You have the language of the board. It says that there's no I-94 document there. But there's no – it didn't address the fact that there is a stamped document that's presented that has I-94 on it. It didn't address that argument, did it? It did not specifically use the word stamp, but it did address the fact that there's not her I-94 in the record. Yes, Your Honor. Well, finish – I didn't mean to interrupt you. Finish what you were going to say, and then I have a question. Well, as we've said, while the board didn't expressly say the word stamp and analyze it, they did explicitly say that her I-94 is not in the record. Okay. So the IJ seemed to have a different take on this. The IJ wasn't necessarily saying, I don't know what this document – whose document this is or what – the IJ seemed to be saying, this is just not the type of parole that would qualify you to get the notice to appear changed. Do you agree with that? The issue with that is the immigration judge was shown something that was not entered into the record. We are assuming that it's the same stamp that was submitted with the motion for administrative closure. Okay, well, let's assume that. I'm not aware of what other document the IJ would be looking at, but let's just assume that. Is it correct then to say this type of parole is not the kind of parole we're talking about when we're looking at the notice to appear, or was the IJ mistaken there? That's why it's key to recognize that the decision that we're reviewing here is the board's decision, and the board did not rely on the IJ's – No, no, I appreciate that. I'm just trying to – we have different pieces of the administrative process saying different things, right? I read the IJ to be saying, this is just not the kind of parole that we mean by parole. And I read the board as saying, we don't have the right documents in front of us. And I hear you on the second piece. I'm trying to figure out, was the IJ on the first piece correct? Based on his citation, it does not appear that the IJ was entirely correct about the conditional versus the 212 parole. But it's – again, it's hard to say given what was – that it was just – he was shown something and nothing was admitted into the record. Which is why the board focused on the lack of evidence in the record and to determine what happened. And it would also be pointed out that the Department of Homeland Security would have the evidence of her parole and would charge her as not entering without admission or parole. Well, because the notice to appear wasn't filed until like six weeks after the entry, something like that? Correct, Your Honor. So you're saying that if the bureaucrats did what they should and if this was a legitimate stamp that was hers, then they would have known to put paroled? Because they did file before the parole expired. Correct. My understanding is that the parole then would have terminated with the filing of the notice to appear. I'm sorry. That it would have terminated with the filing of the notice to appear? Because the – I mean, the statement is that it would last for 60 days. And the notice to appear was filed before that time was up. I'm not saying which way it ought to mean, but as a factual matter, I have the timeline. Wasn't the notice to appear filed before the expiration of this particular piece of paper? Yes, and the decision that was the immigration judge cited actually explains the whole process of the humanitarian parole. And one of the points the board makes is that the parole can be terminated early, including by the filing of a notice to appear. Oh, so there's a case that says that it terminates automatically with the filing of the notice to appear or simply that it can be? I believe it is automatically, Your Honor, but I'm not entirely sure. Okay, but I would have to go to look to the case that the judge cites. Yes, it would be on page 109. Okay, I can do that. What would be the import of that in this case? The termination of parole? Yeah. With respect to the asylum and withholding aspect, none whatsoever. As Petitioner's Counsel has pointed out, this debate over the parole is a potential issue down the line. If she gets... Right, I fully understand the IJ's statement that this does not alter her removability. If she's not entitled to asylum or withholding of removal, she is removable based on this record. And the only issue we're debating here is should the notice to appear have said something different to give her some possible rights later? Should her circumstances change and should she remain in this country? That would be the correct summation of it, that this is about potential future hypotheticals. And there's nothing in the record to suggest that this is in any way, shape, or form imminent. So in that regard, remand ultimately would be futile because there's nothing that would be able to be done. Although if that's true, what's the harm? What's the harm to the government in at least... I mean, does it delay the government in any way if strictly on the remand we said, we can't figure this out, we'll remand to let the agency decide whether to amend the NTA? Does that hurt the government in any way? It does, Your Honor, because it simply delays the enforcement of the removal order. Why though? Why? Why? I mean, this is just a document issue, but if there's no dispute, she's removable. Correct, but it's the government's position that, one, there's no need to remand, and two, remand would be futile, even for such a ministerial action. Yeah, that last part I'm not following. Well, it's the government's position just simply that any delay is benefiting her, even if it doesn't ultimately alter her removability. But kind of where's the delay? The government seems to be pretty active in removing removable people these days, and conversely, if there's something that delayed her removal on other grounds, cert petitions, I don't know, but I thought people were removable even if cert petitions were going on. I'm just trying to figure out, is there any delay unless the government chooses to make it a delay? If we were to say, hypothetically, that you win on the removability issue, but we're going to remand for the sole purpose of the agency deciding whether to alter the NTA, and this does not affect removability in any way, if we wrote that, where's the harm to the government? Well, Your Honor, it would have to go back, and there would have to be an entirely new removal order. Because what they're asking is that the NTA be rewritten with a new charge, which then has to be adjudicated. So changing the word, you know, not admitted to paroled would require that any amendment to an NTA requires a new hearing? Is that the position? In this situation, yes, because you're asking for the amendment to be – the amendment is being done after the immigration proceedings have been completed. I mean, what if we direct otherwise? I don't see why just checking a different box – I mean, I understand her interest in just, you know, some long-term interest, some hypothetical interest, but nonetheless it's a document that says something that's inaccurate that could prejudice her. I don't see why we'd have to redo all of this if that box were simply checked in a different way. I never – I'm not aware of any case law that would suggest that. I'm not aware of any case law, but I would note that the immigration judge decision, the board decision is predicated on her being removable under 212A6, which is entrance without admission or parole. And if you remanded it back on the basis that you believe she's paroled, then that would have to be a new charge. And it's not simply just a matter of checking a box. Okay. I think we understand your position. Let's hear from Mr. Siegel in rebuttal. Why don't you pick up, sir, where we're just leaving off, which is what is the import on – in the administrative process if this box is checked in a different way? Does it all need to be redone somehow? Well, I would argue – I would agree with that. I would argue yes because it's a new charge. It would be – there would be charges of an arriving alien. I'm – it's possible that this court could craft a memorandum that could avoid that. But the bottom line is if this is all true, the agency made an error and they should have provided the court, the immigration court, with the proper documentation to support the charge. They never did any of that. I understand the court's concern about it because, yeah, we want to get it right. We want to have the documents right, and they're just not in this case, and that's fine. But I still – I don't want to – I don't want to switch gears too much, but I just wanted to talk a little bit about the evidence that the court never considered. And I understand the judge issued a catch-all phrase saying I've reviewed all the evidence. Catch-all phrases can be sufficient, but they're not always sufficient, particularly when there's highly probative evidence that hasn't been looked at. Now, in this case, this court has said it's not – when somebody doesn't report something to the police, that's not necessarily dispositive of whether the government is unwilling or able to control. You can fill that gap with background documentation. There's hundreds of pages of background documentation here. The judge or the board did not look at all of that. They didn't look at the fact that in 2019, El Salvador was like – had the highest femicide rate other than Honduras in Latin America. They didn't look at the Petitioner's own circumstance, that she was a victim of statutory rape, and she never – no one was ever prosecuted. Where were the school – where was the school officials, where were the medical providers who were watching her during her pregnancy? None of that was looked at. No one was ever prosecuted. That our own Department of State has said – Well, when you say no one was prosecuted, no – it was never raised as to who there was to prosecute. It was never raised at all by anyone. No one ever inquired why –  Well, she was pregnant. She was underage. She was a teenage girl in a hospital. At least, I would hope that at least here in the States, somebody would have questioned it and said, hey, this seems like a crime. Who's the father? Yeah. I mean, if she was definitely under 18, which she was. But all of – none of this – Does El Salvador have a Romeo and Juliet law? In an American hospital, a lot of times, there'd be no crime. They don't have that. At least in the record now, they don't have it. The only thing in the record is the statutory age of consent, which is 18. In addition to a bunch of other information that essentially establishes that the government might be willing to control persecutors of domestic violence, but they aren't able to. They're just – they don't have the resources. They're understaffed. There's corruption. And all of that is in the documentary record, in the background evidence that this court says is a way to fill that gap when somebody does not report to the police. I just wanted to get that out there for you guys to consider. Okay. We let you go over your time. I'm going to see if my colleagues have further questions for you. Okay. Mr. Siegel, thank you very much. Thank you, Your Honor. Ms. Oliveira, thank you very much. This case is submitted. And that concludes our calendar for this morning. We'll stand and recess until tomorrow at 9 a.m. All rise. It's good to have a little computer. I get it. This court for this session now stands adjourned. Thank you.
judges: Boggs, BRESS, MENDOZA